NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0285n.06
Filed: May 20, 2008

No. 07-5074

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **INSOMNIA INC.; STEVE COOPER,** | ) | |
| | ) | |
| *Plaintiffs-Appellants,* | ) | |
| | ) | ON APPEAL FROM THE |
| **and** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| **NICK FERGIS,** | ) | DISTRICT OF TENNESSEE |
| | ) | |
| *Plaintiff* | ) | OPINION |
| **v.** | | |
| | | |
| **CITY OF MEMPHIS, TENNESSEE; SHELBY COUNTY, TENNESSEE; MEMPHIS AND SHELBY COUNTY LAND USE CONTROL BOARD,** | | |
| | | |
| *Defendants-Appellees.* | | |

**BEFORE: COLE and GRIFFIN, Circuit Judges; FORESTER, District Judge.**[*]

    **R. GUY COLE, JR., Circuit Judge.** Insomnia, Inc., a Tennessee-based corporation, and its owners, Steve Cooper and Nick Fergis, filed suit against the City of Memphis, Tennessee; Shelby County, Tennessee; and the Memphis and Shelby County Land Use Control Board, alleging violations of their rights under the First and Fourteenth Amendments of the United States Constitution. Specifically, Plaintiffs maintain that Defendants denied their application to subdivide their land into three parcels out of hostility to Cooper's involvement in the adult entertainment

---

    [*] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

industry and a concern that the land would be used for the purposes of adult entertainment. Finding that Plaintiffs had not yet received a final decision regarding their land and therefore had not yet suffered a cognizable injury, the district court concluded that the claims were unripe for adjudication and accordingly granted the motions to dismiss filed by the City of Memphis and Shelby County. We affirm the district court's order of dismissal.

**I.**

Insomnia, Inc., whose sole shareholder is Cooper, owns two contiguous parcels of land in Memphis, Tennessee, located in Shelby County. Together, the two plots of land occupy no more than eight acres and are zoned for light to heavy industrial use. In March 2005, Insomnia filed with the City of Memphis and Shelby County Office of Planning and Development ("OPD") an application and preliminary plan to subdivide the two plots of land into three, in order to facilitate the construction of a restaurant, nightclub, and billboard on each respective subdivision. OPD reviewed the submitted plans and conditionally recommended approval of the subdivision, subject to certain terms to which Insomnia agreed.

On March 10, 2005, in compliance with a local ordinance requiring all subdivisions of real property to be approved by the Memphis and Shelby County Land Use Control Board ("LUCB")[1], in addition to the OPD, the LUCB scheduled a hearing to consider Insomnia's application. Present at the hearing were several community members who resided near the land at issue and who voiced their objections to Insomnia's application out of a concern that the land might be used for an adult

---

[1]The LUCB is a hybrid body created under § 26-42 of the Memphis and Shelby County Land Use Code. Half of the LUCB members are appointed by Shelby County, while the other half of the members are appointed by the City of Memphis.

entertainment business. These residents were specifically disturbed because Cooper owned interests in the adult entertainment industry in Memphis and elsewhere.

At the conclusion of the hearing, the LUCB denied the motion to approve the proposal as recommended by the OPD. Thereafter, the LUCB passed a motion requiring Insomnia to resubmit its application as a planned development, rather than as a subdivision, and allowing for closer regulation of the uses to which the property would be put. Rather than resubmitting an application for a planned development, however, Insomnia appealed the denial of its initial application to the Memphis City Council pursuant to § 301.4(H) of the Land Use Code, and on June 21, 2005, the City Council rejected the appeal.

On September 22, 2005, Insomnia and its then-owners, Cooper and Nick Fergus, filed a three-count complaint in the Western District of Tennessee against the City of Memphis, Shelby County, and the LUCB, seeking declaratory relief, compensatory damages, and a permanent injunction. Insomnia contended that the LUCB and City Council issued their denials out of an aversion to the adult entertainment business and Cooper's involvement therein, in violation of the First and Fourteenth Amendments. The City of Memphis and Shelby County moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and on December 19, 2006, the district court granted both motions. Insomnia and Cooper timely appealed to this Court on January 17, 2007.

**II.**

**A. Standard of Review**

We apply a de novo standard of review in assessing a district court's dismissal for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). *Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 605 (6th Cir. 2005). In considering a motion to dismiss under Rule 12(b)(6), we "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Benzon*, 420 F.3d at 605 (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002)). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003) (quoting *Hishon v. King & Spalding*, 457 U.S. 69, 73 (1984)).

**B.       Ripeness of Plaintiffs' Claim**

The sole issue on appeal is whether Plaintiffs' claims under the First and Fourteenth Amendments must be dismissed for lack of ripeness. The district court found Plaintiffs' claims to be unripe, because Plaintiffs had yet to receive a final denial or authorization to proceed with their development plans. In response, Plaintiffs argue that the district court erred because the injury they suffered materialized at the exact moment when Defendants denied their application for a subdivision out of hostility to the adult entertainment industry in which Cooper is involved. More specifically, Plaintiffs assert that it was improper for the district court to apply the ripeness doctrine as explicated by the Supreme Court in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), in the context of a takings claim, where a final

governmental decision is a substantive element of a takings claim and therefore a prerequisite for federal review. Unlike a takings claim, Plaintiffs maintain that, in the First Amendment context, there is no finality requirement; rather, an injury to land use becomes legally cognizable as soon as the adverse governmental decision is made.

Defendants, in contrast, maintain that the district court acted properly in dismissing Plaintiffs' suit because the claims they assert in their complaint are not ripe. In developing this argument, Defendants insist that no final decision was made regarding the development of the land at issue, and in the absence of finality, the district court lacked subject matter jurisdiction. Specifically, Defendants explain that if Plaintiffs submit a revised plan for a proposed development, as recommended by the LUCB, their plan may either be allowed or denied, and if allowed, Plaintiffs' claims would be rendered moot. We find Defendants' argument persuasive.

Ripeness is one of several principles of justiciability predicated on both "Article III limitations" and "prudential reasons for refusing to exercise jurisdiction." *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006). The doctrine is "designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Kentucky Press Ass'n*, 454 F.3d at 509 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). The question of ripeness arises in those cases "'anchored in future events that may not occur as anticipated, or at all.'" *Id.* (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 294 (1997)).

In determining whether a claim is ripe for review, courts consider three factors: "(1) the likelihood that the harm alleged by [the] plaintiffs will ever come to pass; (2) whether the factual

record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at [this] stage in the proceedings." *Warshak v. United States*, 490 F.3d 455, 467 (6th Cir. 2007) (internal quotations and citations omitted).

While the foregoing factors outline the ripeness inquiry in general, in *Williamson County*, 473 U.S. at 172, the Supreme Court subsequently articulated a more specific formulation of ripeness for cases involving the alleged taking of a property interest. First, for a plaintiff to successfully advance a claim that governmental action amounts to a regulatory taking, the "governmental entity charged with implementing the regulations [must] ha[ve] reached a final decision regarding the application of the regulations to the property at issue." *Id*. at 186. In addition to this finality requirement, a takings claim only becomes ripe for review when the plaintiff "seek[s] compensation through the procedures the State has provided for doing so." *Id*. at 194.

Following *Williamson County*, we extended the first prong of the ripeness inquiry—finality—beyond claims of regulatory takings to various other constitutional claims arising out of land use disputes. For example, in both *Bannum, Inc. v. City of Louisville, Kentucky*, 958 F.2d 1354, 1362 (6th Cir. 1992) and *Bigelow v. Michigan Department of Natural Resources*, 970 F.2d 154, 158-59 (6th Cir. 1992), we applied the finality requirement to a claim that a city's zoning regulations denied the plaintiff equal protection of the laws and a claim that a plan giving exclusive fishing rights to a group of American Indians denied commercial fisherman equal protection of the laws.

Likewise, several sister circuits have expanded the applicability of the finality requirement from takings claims to equal protection and due process claims emerging in the context of land use disputes. *See, e.g., Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1295 (3d Cir. 1993) (imposing finality requirement upon plaintiff's claim that a zoning hearing officer's revocation of a land use permit resulted in an equal protection violation); *Unity Ventures v. Lake County*, 841 F.2d 770, 775 (7th Cir. 1988) (applying the finality requirement to plaintiff's claim that denial of access to sanitary sewer services was a violation of due process and equal protection).

Even more broadly, the Second Circuit has set forth four policy considerations underlying the extension of the *Williamson County* finality requirement to constitutional claims arising in land disputes:

> First . . . requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record . . . . Second, and relatedly, only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel . . . . Third, a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes. Thus, requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible . . . . Finally, since *Williamson County*, courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.

*Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005).

Drawing on the foregoing ripeness doctrine, the district court explained that, in land regulation cases, federal courts have entertained a long-standing rule that local government entities first issue final decisions regarding the land at issue before any challenge to such decision is mature

for federal review. Applying this well-settled principle to Plaintiffs' case, the district court rejected Plaintiffs' argument that their case became ripe for federal adjudication at the time the LUCB denied their application and instead found that Plaintiffs had "not yet received a final authorization to move forward or a final denial." *Insomnia, Inc. v. City of Memphis*, 2006 WL 3759895 at \*4 (W.D. Tenn. Dec. 19, 2006). That is, the LUCB's actions amounted to an interim order informing Plaintiffs to resubmit their proposal in further detail. Since Plaintiffs did not submit a revised application on the basis of which the LUCB could issue a final decision, the court concluded that Plaintiffs had not suffered a discrete injury and so their claim was premature for federal review. We agree.

While we have not addressed the ripeness issue in the context of a First Amendment challenge to land use, we have done so in cases raising other challenges to land use, including procedural due process claims, takings claims, substantive due process claims, and equal protection claims. In fact, the only type of case in which we have not imposed the finality requirement on constitutional claims arising out of land use disputes is that which presents a purported violation of procedural due process. Emphasizing the distinction between takings claims and procedural claims involving land use, we issued an opinion in *Nasierowski Brothers, Investment Company v. City of Sterling Heights*, 949 F.2d 890, 893 (6th Cir. 1991), which reversed the trial court's reliance on *Williamson County* as inapposite. We opined, "unlike the plaintiff in [*Williamson County*], Nasierowski did not allege an unconstitutional 'taking' of his property under the fifth and fourteenth amendments" but instead "asserted that he was deprived of *procedural* due process when he was not accorded a public hearing at which to challenge" the zoning of his property. *Nasierowski Bros.*, 949 F.2d at 893 (emphasis in original). *Nasierowski Brothers* underscored that, with respect to the

"requirement of exhaustion," there is a "vital distinction between procedural due process claims and other varieties of constitutional grievances stemming from land use decisions." *Id*. at 893-94. In contrast to a takings claim, "a procedural due process claim is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency." *Id*. at 894. Applying these principles to the facts of Nasierowski's case, we concluded that "Nasierowski's injuries accrued and attached immediately when Council convened in executive session and materially deviated from the recommendations of the planning commission, thus subverting the purpose of the duly conducted notice and comment process." *Id*.

After issuing our decision in *Nasierowski Brothers*, we underscored that our departure from the finality requirement arose because of the unique procedural nature of the claims in that case. In *Bigelow v. Michigan Department of Natural Resources*, a case involving takings, equal protection, and procedural due process challenges to a land regulation, we distinguished the facts before us from those in *Nasierowski Brothers* because the former "did not present a pure claim of procedural due process, but instead involve[d] several constitutional claims." *Bigelow*, 970 F.2d at 159. Finding this difference to be "significant," we cabined *Nasierowski Brothers* "to stand merely for the sensible proposition that while different circumstances may produce different results, the final decision rule does not apply when the denial of procedural due process itself creates an injury." *Bigelow*, 970 F.2d at 159. In other words, *Bigelow* subsequently limited the reach of *Nasierowski Brothers* to only a subset of *purely procedural* challenges to land use regulations.

While we have departed from the finality requirement for purely procedural claims, the Second Circuit has also declined to apply the finality requirement in a limited set of First

Amendment challenges to land use disputes. In *Dougherty v. Town of North Hempstead Board of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002), the Second Circuit held that the finality requirement was not applicable to the plaintiff's claim that a local zoning board revoked his land use permit in retaliation for his pursuit of a federal court action, in violation of the First Amendment. Explaining that "in the First Amendment context, the ripeness doctrine is somewhat relaxed[,]" the Second Circuit held that "[u]nder the circumstances here . . . the alleged retaliatory revocation of Dougherty's permit gave rise to a claim ripe for adjudication." *Id*.

Following its decision in *Dougherty*, however, the Second Circuit elected to impose the finality requirement on a land use matter presenting First Amendment claims. This subsequent line of cases interpreting *Dougherty* suggests that, contrary to Plaintiffs' assertion, the finality requirement is applicable to the First Amendment claim at issue. For example, in *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2d Cir. 2005), the plaintiffs invoked the First Amendment to raise violations of their rights to assemble peaceably and exercise their religion freely after they were served with a cease and desist order related to the use of their home for prayer meetings. Rather than obtaining a variance from the zoning board of appeals, the plaintiffs instead instituted litigation claiming that the application of the zoning ordinance to them violated their rights under the First Amendment. *Murphy*, 402 F.3d at 350. To determine whether the plaintiffs were subject to the finality requirement prior to federal review of their claims, the Second Circuit conducted a two-part analysis: "Following the guideposts outlined in *Dougherty* we ask: (1) whether the [plaintiffs] experienced an immediate injury as a result of [the defendant's] actions and (2) whether

requiring the [plaintiffs] to pursue additional administrative remedies would further define their alleged injuries." *Id*. at 351.

With respect to the first prong, the court found that the plaintiffs did not suffer an immediate injury because, if they had chosen to appeal the cease and desist order to the zoning board of appeals, the effect would have been to stay the enforcement of the order. *Murphy*, 402 F.3d at 351. Turning to the second prong, the court concluded that "the resolution of the constitutional and statutory claims we are asked to consider here hinge on factual circumstances not yet fully developed." *Id*. In light of the outcomes of these two prongs, the *Murphy* court found it was "appropriate to apply *Williamson County*'s prong-one finality requirement to each of the [plaintiffs'] claims" and that it accordingly lacked jurisdiction over their claims. *Id*. at 352.

As in *Murphy*, in the instant case, "[e]nforcing the requirement that [Plaintiffs] first obtain a final, definitive decision from local zoning authorities ensures that federal review – should the occasion eventually arise – is premised on concrete and established facts" and that "all non-constitutional avenues of resolution have been explored first, perhaps obviating the need for judicial entanglement in constitutional disputes." *Id*. at 353. Despite Plaintiffs' insistence that *Dougherty* should inform the disposition of their own First Amendment claims, the Second Circuit's subsequent departure from *Dougherty* in *Murphy* is more directly applicable to the facts at hand.

Under the first prong of *Murphy*, Plaintiffs have not suffered an immediate injury as a result of Defendant's actions. If Plaintiffs file a renewed plan as a proposed development, as the LUCB ordered, there is a chance that their proposal will be approved; under such circumstances, Plaintiffs will be entitled to proceed with the subdivision of their land and even conduct adult entertainment

on the premises if they so choose. Such an outcome would discharge any claims of First Amendment retaliation and obviate the need for federal review. If, however, Plaintiffs' renewed plan as a proposed development is rejected, this outcome will further define the contours of Plaintiffs' claim of First Amendment retaliation. Taken together, these two prongs indicate that the district court acted properly in dismissing Plaintiffs' claim as premature.

Moreover, by recognizing that Plaintiffs' claims are not ripe for federal review, the district court promoted three of the four policy considerations the *Murphy* Court outlined as underlying the finality requirement. First, waiting until Plaintiffs file a plan for a proposed development before undertaking federal review will ensure "the development of a full record." *Id*. at 348. Second, as explained above, if Plaintiffs' revised proposal is approved, they will obtain "the relief . . . [they] seek[] without requiring judicial entanglement in constitutional disputes." *Id*. Lastly, the district court evinced its respect for "federalism principles" by recognizing that "land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Id*.

As a final matter, it is important to note that Plaintiffs do not raise any claims procedural in nature; rather, their allegations of First Amendment retaliation are purely substantive. Accordingly, our departure from the finality requirement for purely procedural claims, as articulated in *Nasierowski Brothers*, is unwarranted in the instant case. Collectively, these policy and doctrinal considerations make clear that the district court acted properly in dismissing Plaintiffs' claims as unripe.

**III.**

For the preceding reasons, we **AFFIRM** the judgment of the district court.