RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0370p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

GRACE COMMUNITY CHURCH,

*Plaintiff-Appellant,*

*v.*

No. 07-2509

LENOX TOWNSHIP,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-13526—Paul D. Borman, District Judge.

Argued: September 15, 2008

Decided and Filed: October 10, 2008

Before: GUY, RYAN, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Daniel P. Dalton, TOMKIW DALTON, Royal Oak, Michigan, for Appellant. Thomas J. McGraw, KUPELIAN, ORMOND & MAGY, Southfield, Michigan, for Appellee. **ON BRIEF:** Daniel P. Dalton, TOMKIW DALTON, Royal Oak, Michigan, for Appellant. Thomas J. McGraw, D. Randall Gilmer, KUPELIAN, ORMOND & MAGY, Southfield, Michigan, for Appellee.

_____

## OPINION

_____

McKEAGUE, Circuit Judge. Grace Community Church applied for and was granted a special land use permit by the Lenox Township Planning Commission to operate a residential facility for religious instruction and spiritual counseling. The special use permit included certain restrictions. A month later, the Planning Commission, faced with evidence that the restrictions had been violated, revoked the permit. Instead of attempting to rebut or explain the evidence or appealing the revocation to the Zoning Board of Appeals, Grace Community Church filed suit. The complaint challenges the revocation as a violation of the Church's rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, and as a denial of equal protection. The district court awarded summary judgment to the Township, concluding the action was not ripe, as the Church had failed to exhaust administrative remedies and obtain a final decision before filing suit.

On appeal, Grace Church contends exhaustion is not prerequisite to enforcement of rights under the RLUIPA, relying primarily on *DiLaura v. Ann Arbor Twp.*, 30 F. App'x 501 (6th Cir.

2002).  For the reasons that follow, we find no error and therefore affirm the district court's judgment.

## I. BACKGROUND

Grace Community Church is located in Lenox Township, Macomb County, approximately 30 miles north of Detroit.  The Church is pastored by Reverend William Pacey, an ordained minister of the Anchor Bay Evangelistic Association.  Rev. Pacey established Grace Community Church in 1996 "to provide a place of worship for those who 'just didn't fit in' to a normal church setting."  Pacey aff. at ¶ 3, JA 317.  Grace Community Church views people's emotional and substance abuse problems as stemming from a strained personal relationship with God.  *Id*. at ¶¶ 6-7.  To assist people in learning to trust God, the Church began operating residential programs at various sites.  In 2004, the Church purchased property on 30 Mile Road in Lenox Township that had previously been home to a Catholic monastery and later, a residential nursing care facility.  The Church intended to consolidate its worship and residential counseling ministries under one roof.

The Church applied to the Lenox Township Planning Commission for a special land use permit in early 2005.  In June 2005, the Commission approved the application for operation of the Church, but withheld action regarding the residential facility pending receipt of further information from Rev. Pacey and consideration of appropriate conditions.  At its August 22, 2005 meeting, the Commission granted the permit for operation of the residential program, the Christian Discipleship Center, subject to various conditions.  The conditions included requirements, *inter alia*:  that residents be pre-screened to determine that they are of a "desirable nature" and pose no danger to the surrounding community; that the facility not be used as a halfway house or to house persons undergoing alcohol or drug rehabilitation; and that, in the event of a complaint suggesting a violation of the conditions, a representative of the Church appear before the Commission to show cause why the permit should not be revoked.

At its very next meeting, on September 26, 2005, the Commission received information to the effect that, contrary to assurances given by Rev. Pacey, substance abuse counseling was being provided at the Christian Discipleship Center on 30 Mile Road.  The information came in the form of a report from the Township attorney, Terry Welch, who had been advised of a complaint received by the Macomb County Sheriff.  The Sheriff's Department had received the complaint from Ronald Riggi, whose nineteen year-old daughter, Robin, had been released from the Macomb County Jail and referred by local District Judge Denis R. LeDuc to Grace Community Church for substance abuse counseling.  Riggi and his daughter had met with Rev. Pacey at the 30 Mile Road site.  Riggi had paid the $250 application fee charged by Rev. Pacey with the understanding that his daughter would receive substance abuse counseling.  When Riggi learned that his daughter had not received any substance abuse counseling during her first week in the program, Riggi confronted Rev. Pacey.  This confrontation led to the termination of Robin's participation in the program and to Riggi's complaint to the Sheriff's Department about "possible fraudulent or suspicious activities."  Welch also reported that when this information was conveyed to Township officials, Planning Commission member Karen Kurchi undertook an internet search and found several descriptions of Grace House in New Haven (adjacent to Lenox Township) as a halfway house or ¾-way house assisting people in overcoming emotional and physical addictions.

In response to this information, Rev. Pacey refused to comment on the incident with Ronald Riggi and his daughter.  He maintained, however, that he had not provided any substance abuse counseling at the 30 Mile Road site and that the special use permit conditions placed on Grace Community Church (without mentioning those imposed on the Christian Discipleship Center) had been met.  One of the Commission members thereupon made a motion to revoke the special use permit for the Christian Discipleship Center, which carried with little discussion.

The Church made no attempt to obtain reconsideration of the revocation decision, did not apply for reinstatement of the special use permit, and did not appeal the revocation decision to the Zoning Board of Appeals. Almost one year later, Grace Community Church commenced this action by filing its complaint in the Eastern District of Michigan on August 7, 2006. The complaint names Lenox Township as defendant and contains four counts, including claims under RLUIPA and the Religious Freedom Restoration Act, a claim for denial of equal protection, and a claim for damages based on unconstitutional taking and tortious interference with economic advantage.

After the claim for relief under the Religious Freedom Restoration Act was voluntarily dismissed, both parties filed motions for summary judgment. The Township moved for summary judgment on all three remaining claims contending they should be dismissed for lack of ripeness. The Church moved for partial summary judgment contending it was entitled to judgment as a matter of law on its claim under RLUIPA. The district court conducted a hearing on the motions on August 28, 2007 and issued its ruling three days later, granting the Township's motion and denying the Church's. The court reasoned that the Church, by failing to pursue its remedies with the Zoning Board of Appeals, failed to obtain a final decision on its entitlement to the permit. The court therefore dismissed the action as unripe, without prejudice.

In conjunction with the summary judgment ruling, the court also denied the Church's motion to compel disclosure of attorney-client letters that had been inadvertently and temporarily disclosed by the Township to the Church in discovery. The court concluded that the Township, despite the inadvertent disclosure, had not waived the attorney-client privilege. The Church moved for reconsideration of both adverse rulings, which motion was denied on November 2, 2007. This timely appeal followed.

## II. ANALYSIS

### A. Standard of Review

In dismissing the action for lack of ripeness, the district court granted the Township's motion for summary judgment. The court of appeals reviews *de novo* an order granting summary judgment. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### B. RLUIPA Claim

Grace Community Church does not argue there is a genuine fact dispute that precludes summary judgment, but rather contends the district court erred as a matter of law in its evaluation of ripeness. The Church relies heavily on an unpublished decision, *DiLaura v. Ann Arbor Charter Twp.*, 30 F. App'x 501 (6th Cir. 2002). In *DiLaura*, an RLUIPA claim brought via 42 U.S.C. § 1983 was held to be sufficiently ripe to be justiciable even though the plaintiffs had not exhausted available administrative remedies and even though the defendant township had not threatened to enforce its ordinance. *Id*. at 504-05.

The *DiLaura* RLUIPA claim grew out of a request to use a large house as a religious retreat house, for prayer and fellowship. The request was denied by the township zoning officer because the proposed use was not within the residential uses authorized under the zoning ordinance. The DiLauras then applied for a variance before the Zoning Board of Appeals, which was denied. They then filed suit. After the district court dismissed the action for lack of ripeness, the Sixth Circuit reversed, holding that the Zoning Board of Appeals' denial was a sufficiently final decision and the DiLauras were not obliged to also apply for a conditional use permit before seeking redress in court. *Id*. The court also held that the threat of significant penalties, in the event the DiLauras began

operating the retreat house without permission, represented sufficient hardship to make out a justiciable case or controversy. *Id.* at 505.

In the instant case, the district court distinguished *DiLaura*, noting that, unlike the DiLauras, Grace Community Church had not even sought relief from the Zoning Board of Appeals. With reference to the Lenox Township Zoning Ordinance, the court observed that the Zoning Board of Appeals had express authority to reverse, modify or affirm the Planning Commission's revocation of the Church's special use permit. By failing to appeal the revocation decision, the court concluded, the Church, in effect, denied itself a ruling on its position that the Planning Commission had relied on erroneous information, and denied itself a final decision on the propriety of the revocation.

The district court also noted that the decision cited in *DiLaura* for the proposition that exhaustion is not prerequisite to an RLUIPA claim, *Murphy v. Zoning Commission of the Town of New Milford*, 148 F. Supp. 2d 173, 185 (D. Conn. 2001) ("*Murphy I*"), had been reversed, 402 F.3d 342 (2d Cir. 2005) ("*Murphy II*"). The court distilled the teaching of *Murphy II* into the following paragraph:

> In *Murphy v. New Milford Zoning Commission*, 402 F.3d 342 (2d Cir. 2005) (*Murphy II*), a Second Circuit case, the plaintiffs hosted prayer meetings in their single family home and were issued a cease and desist order for violating a single-family zoning regulation. *Id.* at 345. The plaintiffs did not appeal the cease and desist order to the Zoning Board of Appeal to seek a variance. *Id.* Instead, the plaintiffs filed suit in federal court, arguing, among other things, a violation of the RLUIPA. *Id.* at 346. The district court issued an injunction and the case was appealed. *Id.* The Second Circuit found that until the variance and appeals process was completed, the dispute remained unripe. *Id.* at 354. Additionally, the court held that (1) "requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record"; (2) "only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel"; (3) "a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes"; (4) that "requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible"; and (5) that "federal principles also buttress the finality requirement." *Id.* at 348. Just as in *DiLaura*, the court also found that "property owner need not pursue such applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Id.* at 349.

*Grace Cmty. Church v. Lenox Twp.*, 2007 WL 2533884 at *6 (E.D. Mich. Aug. 31, 2007). Finding *Murphy II* persuasive, the district court went on to conclude that because the Church had not appealed the revocation decision, "the factual record is not sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims." *Id.* Further, the court noted there was no evidence that appeal would be futile because "the zoning agency had dug in its heels and made it clear that an appeal would be denied." *Id.* at *7. On appeal, the Church insists that, notwithstanding *Murphy II*, *DiLaura* remains the controlling law of the Sixth Circuit. The Church recognizes that *DiLaura* is unpublished and therefore lacks binding precedential effect, but maintains that it represents the best Sixth Circuit authority on the question and, in holding that exhaustion is not prerequisite to assertion of an RLUIPA claim, represents sound law.

Exhaustion and finality are two distinct concerns, although they sometimes overlap. The fact that a claimant may, under certain circumstances, seek redress in court for infringement of his rights

without having to first exhaust administrative or other available remedies does not mean that his grievance is necessarily the product of official action bearing sufficient indicia of finality to render his claim "ripe" or justiciable in federal court. Here, the district court's opinion includes the word "exhaustion," but its rationale for dismissal is clearly and unmistakably couched in terms of finality and ripeness.

The DiLauras' RLUIPA claim was deemed ripe only after they had unsuccessfully appealed the initial denial of their request to the Zoning Board of Appeals. Grace Church acknowledges that the *DiLaura* court noted this fact, but argues it was "not the sole determining factor." Yet, the notion that the DiLauras' claim would have been deemed ripe even if they had not sought relief in the Zoning Board of Appeals is purely speculative. Here, the Church undisputedly failed to seek relief from the Zoning Board of Appeals and the district court concluded this failure was critical for two important reasons: (1) because it left the factual record insufficiently developed to enable fair adjudication of the claim; and (2) because, considering the ease with which the Church could obtain relief from the Zoning Board of Appeals, the denial of judicial review would result in little hardship to the Church. The district court thus identified a material factual distinction that justified its departure from the outcome reached in *DiLaura*.

In *Insomnia, Inc. v. City of Memphis, Tenn.*, 2008 WL 2121053 (6th Cir. May 20, 2008), we find an excellent recapitulation of ripeness considerations in relation to a First Amendment challenge to local land use regulation. The court noted that ripeness is a matter of justiciability, implicating "prudential reasons for refusing to exercise jurisdiction." *Id*. at *2 (quoting *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006)). The doctrine is designed to prevent the courts from, through premature adjudication, "entangling themselves in abstract disagreements." *Id*. (quoting *Kentucky Press Ass'n*, 454 F.3d at 509)). "In determining whether a claim is ripe for review, courts consider three factors: '(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings.'" *Id*. at *3 (quoting *Warshak v. United States*, 490 F.3d 455, 467 (6th Cir. 2007)).

In connection with land use regulation in particular, the *Insomnia* court identified "the finality requirement" as critical to the ripeness inquiry. *Id*. at *3. The finality requirement has been applied to various constitutional claims arising out of land use disputes and requires that the "governmental entity charged with implementing the regulations must have reached a final decision regarding the application of the regulations to the property at issue." *Id*. (quoting *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985)). To explain the policy considerations underlying this finality requirement, *Insomnia* quotes at length from *Murphy II*, 402 F.3d at 348, the very same language quoted by the district court below in dismissing Grace Community Church's complaint for lack of ripeness:

> First . . . requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record. . . . Second, and relatedly, only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel. . . . Third, a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes. Thus, requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible. . . . Finally, since *Williamson County*, courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that

land use disputes are uniquely matters of local concern more aptly suited for local resolution.

*Id*. at \*3.  The *Insomnia* court went on to affirm the lower court's order of dismissal for lack of finality based on three of the above considerations, i.e., need for development of a full record, preference for avoiding unnecessary judicial entanglement in constitutional issues, and preference for allowing local resolution of local land use disputes.  *Id*. at \*6.  Indeed, all three considerations apply with equal force in this case.

Here, Grace Community Church had been granted a special use permit to operate the Christian Discipleship Center on August 22, 2005.  Then, just one month later, the Church was afforded the opportunity, in accordance with the terms of the permit, to show cause why, in the face of evidence that the terms of its permit had been violated, the permit should not be revoked.  The evidence consisted of a citizen complaint and internet information suggesting that the Church had held the Christian Discipleship Center out to the public as a resource for substance abuse counseling. If such counseling had occurred at the Christian Discipleship Center, it would have been in direct contradiction of assurances given to the Planning Commission by Rev. Pacey during the permit application process, and in violation of the conditions attached to the special use permit.

In response to the information presented at the September 26, 2005 meeting, however, Rev. Pacey had no comment—except to say that he had not conducted substance abuse counseling at the Christian Discipleship Center and that the permit conditions imposed on the Church had been complied with.  He explained that he had not seen the materials indicating that the Christian Discipleship Center had held itself out as a resource for substance abuse counseling.  Unsatisfied with this explanation, the Commission approved a motion to revoke the permit for the Christian Discipleship Center.  As though to underscore the Commission's frustration with Rev. Pacey's lack of response, one Commission member expressly asked the record to reflect that Rev. Pacey said, "No comment on the incident."

Inasmuch as Rev. Pacey had not previously seen the documentation referred to in the meeting, it is understandable that he was ill-prepared to refute or explain away the impression that Church members had engaged, or intended to engage, in expressly prohibited activities at the Christian Discipleship Center.  It is equally understandable that Commission members were unimpressed by Rev. Pacey's renewed assurances in the face of evidence that similar assurances given just three months earlier had been disregarded.  In any event, it is abundantly clear that at the end of the meeting on September 26, 2005, the record was incomplete and the matter of the special use permit anything but finally resolved.  Acting on the strength of a *prima facie* showing of a violation—i.e., an inconclusive but essentially unrebutted showing—the Commission decided to revoke the permit.

Yet, the record is devoid of any efforts by the Church to complete the factual record, to more fully explain its position to the Commission, to seek reconsideration, or to appeal the revocation decision to the Zoning Board of Appeals.  Instead, it is undisputed that the Church made no effort to resolve the dispute locally before filing this action in federal court some ten months later.  Under these circumstances, it is clear that all three of the lack-of-finality reasons cited in *Insomnia* are equally present in this case.

The Church characterizes the district court's ruling as having erroneously required exhaustion, not finality, and then takes pains to distinguish exhaustion from finality, insisting that the revocation decision *was* final.  In support of this argument, the Church quotes the following language from *Bigelow v. Michigan Dep't of Natural Resources*, 970 F.2d 154 (6th Cir. 1992):

What is needed before litigation can proceed in a case such as this is that proceedings have reached some sort of an impasse and the position of the parties has been defined. We do not want to encourage litigation that is likely to be solved by further administrative action and we do not want to put barriers to litigation in front of litigants when it is obvious that the process down the administrative road would be a waste of time and money. *We believe that finality, not the requirement of exhaustion of remedies, is the appropriate determinant of when litigation may begin.* By finality we mean that the actions of the city were such that further administrative action by Bannum would not be productive.

*Id.* at 158 (emphasis in original) (citing *Bannum v. City of Louisville*, 958 F.2d 1354, 1362-63 (6th Cir. 1992)). The Church thus maintains that at the September 26, 2005 meeting, the positions of the parties had been defined and it had become obvious that further administrative action would not be productive.

We find *Bigelow* to be entirely consistent with *Insomnia*. Finality is prerequisite to litigation. The Church's contention, however, that finality had been achieved on September 26, 2005—i.e., that the parties' positions had been defined and an impasse reached—is belied by the record. The permit was revoked because the Church's position was *undefined*. In response to evidence of ongoing permit violations, Rev. Pacey stood mute. The Church's position now is that the Commission made its decision based on erroneous information, but the Church made no attempt in September 2005 to show that it had not held the Christian Discipleship Center out as a resource for substance abuse counseling. When the Church's position was finally better defined and the record more fully developed, in the Fall of 2007, the relief it sought was almost immediately forthcoming.

The Church finally requested reinstatement of the special use permit in September 2007, right after the district court had dismissed the Church's complaint. Though two years had passed since revocation, the Commission acted expeditiously on the request. The Commission conducted a meeting on September 24, 2007, at which the Church's attorney and Rev. Pacey addressed the still unresolved concerns of Commission members about the mission of the Christian Discipleship Center and the character of its residents. On October 22, 2007, a public hearing was conducted, in which township residents' concerns were aired and addressed. Then, just one month later, at the Commission's next meeting on November 26, 2007, the special use permit requested by the Christian Discipleship Center was re-approved.

Not only does this record of administrative proceedings demonstrate the importance of adequate factual development in achieving finality, it also refutes the Church's argument that pursuit of administrative relief would have been futile, and illustrates how unnecessary entanglement of the judiciary in litigation over constitutional issues can and should be avoided in favor of local and efficient resolution of land use disputes. The record further demonstrates that, far from visiting hardship on the Church, the withholding of judicial consideration actually facilitated resolution of the dispute.

In other words, the post-dismissal relations of the parties serve only to validate the district court's prudential judgment that the Church's resort to litigation was premature. Yet, after emphasizing that ripeness requires finality, not necessarily exhaustion, the Church alternatively argues that even finality is not required in this context. The Church observes that the finality requirement imposed in *Murphy II* (and adopted in *Insomnia*) is an expansion of the ripeness analysis applied to an unconstitutional "taking" of property claim in *Williamson County*. The Sixth Circuit, unlike the Second Circuit, the Church contends, has construed *Williamson County* finality as applying only to taking claims, not to other kinds of land use disputes. *See Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 893-94 (6th Cir. 1991).

This argument was conclusively rejected in *Insomnia*, 2008 WL 2121053 at *4-5, where the court explained that *Nasierowski*, a land use dispute involving a procedural due process claim, represents a limited exception. The court explained that a procedural due process claim is "the only type of case in which we have not imposed the finality requirement on constitutional claims arising out of land use disputes." *Id*. at *4. This case does not present a procedural due process claim. It is thus clear that the finality requirement is an important element of the ripeness inquiry in this case.

It is also clear that, when the Lenox Township Planning Commission decided to revoke the special use permit for the Christian Discipleship Center on September 26, 2005, because of the inadequacy of Rev. Pacey's response to evidence of violations, the parties' positions remained ill-defined and finality had hardly been achieved. The analysis employed in the Sixth Circuit's recent decision in *Insomnia*, which we here adopt, confirms the propriety of the district court's ruling that this litigation was premature and subject to dismissal for lack of ripeness. We therefore affirm dismissal of the Church's RLUIPA claim.

### C. Equal Protection Claim

The Church complains that the district court failed to separately explain why its equal protection claim was also dismissed. While it is true that the district court did not, in its evaluation of ripeness, distinguish between the the RLUIPA and equal protection claims, there was no need to. For the same reasons that ripeness was lacking in relation to litigation of the Church's RLUIPA claim, it was also lacking in relation to litigation of the equal protection claim. *See Insomnia*, 2008 WL 2121053 at *3 (citing *Bigelow* and recognizing that the finality requirement also applies to equal protection challenges to land use regulation). It follows that dismissal of the equal protection claim was also proper.[1]

### III.  CONCLUSION

Accordingly, the district court's judgment, dismissing the Church's action as nonjusticiable for lack of ripeness, is **AFFIRMED**.[2]

---

[1]The complaint also asserts a claim for damages based on unconstitutional taking and tortious interference with economic advantage. The Church has not, in its appellate briefing, objected to the district court's dismissal of this claim. Any such objection is therefore deemed abandoned and not reviewable on appeal. *See Renkel v. United States*, 456 F.3d 640, 642 n.1 (6th Cir. 2006).

[2]This disposition renders moot the Church's appeal from the denial of its motion to compel discovery.