CONGREGATION ANSHEI ROOSEVELT; Congregation Yeshivas Me'On Hatorah, Appellants

v.

PLANNING AND ZONING BOARD OF the BOROUGH OF ROOSEVELT; Mayor and Council of the Borough of Roosevelt; Borough of Roosevelt; Roosevelt Preservation Association LLC; Jeffrey Ellentuck; Peggy Malkin; Steven Yeger; Jane Rothfuss; Allison Petrilla; James Alt.

No. 08–3907.

United States Court of Appeals, Third Circuit.

Argued on July 7, 2009.

Opinion filed: July 22, 2009.

Bruce D. Shoulson, Esquire (Argued), Lowenstein & Sandler, Roseland, NJ, for Appellants.

Howard D. Cohen, Esquire, Michael E. Sullivan, Esquire, Parker McCay, Lawrenceville, NJ, Marci A. Hamilton, Esquire (Argued), Washington Crossing, PA, Michele R. Donato, Esquire, Lavellette, NJ, for Appellees.

Before: SLOVITER, AMBRO, and JORDAN, Circuit Judges.

## OPINION

AMBRO, Circuit Judge.

Appellants Congregation Anshei Roosevelt (the "Congregation") and Congregation Yeshivas Me'On Hatorah (the "Yeshiva") filed a complaint in the District Court of New Jersey against, among others, the Borough of Roosevelt, New Jersey, its Mayor and Council, and its Planning and Zoning Board. The complaint asserted violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, and various claims arising under state law. The Borough, the Mayor, the Council, and the Zoning Board moved to dismiss the complaint as not ripe for judicial review. The District Court granted the motion and this appeal followed.[1] We conclude as well that the federal claims are not ripe for our review, and thus affirm the District Court's dismissal.

Because we write solely for the parties, we recount only the facts relevant to our analysis. The Congregation is located within the Borough, a small New Deal resettlement community. The synagogue housing the Congregation was constructed before the Borough adopted any zoning regulations, but subsequent zoning ordinances designated the area as an R-40 Zone, in which houses of worship are permitted as conditional uses. The synagogue does not meet all the necessary conditions for use. However, under the New Jersey Municipal Land Use Law, a pre-existing structure may continue in use notwithstanding its failure to comply with an after-enacted zoning ordinance. *See* N.J. Stat. Ann. § 40:55D-68.

In 2005, the Congregation entered into an agreement with the Yeshiva. Pursuant to the agreement, the Yeshiva would provide the Congregation with needed rabbinical services, and the Congregation would allow the Yeshiva to conduct study and worship activities at the synagogue. After the Yeshiva began operating on the property, a neighbor complained to the zoning officer that the synagogue property was being used for a private school in violation of the local ordinance. The zoning officer consulted with the Borough attorney, who provided a written opinion that the Yeshiva's use was comprehended within the existing synagogue use. The zoning officer thereafter ruled that the Yeshiva could continue to operate on the property.

The Roosevelt Preservation Association, a concerned citizen's group, appealed the zoning officer's decision to the Board, which subsequently held hearings.[2] Rabbi Zevulun Charlop, an expert on Jewish religious practice, testified that: a Yeshiva is a place where people congregate to study Torah and worship; a synagogue may not necessarily be a Yeshiva, but a Yeshiva is

---

1. The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). We have appellate jurisdiction under 28 U.S.C. § 1291.

2. The hearings were conducted on December 13, 2005, March 14, 2006, and September 12, 2006.

part of a synagogue; and a synagogue serves as a house of worship and of study. The Temple President testified that the residence on the property was housing six rabbis in training. Objecting neighbors testified that there were about 34 students enrolled in the Yeshiva and living in buildings throughout the Borough, the students congregate on the property and the street in the evenings, and there are numerous vehicles traveling to and from the synagogue on a daily basis.

On July 24, 2007, the Board adopted a resolution overturning the decision of the zoning officer. It accepted Rabbi Charlop's testimony that a Yeshiva can be a synagogue, but went on as follows:

> The argument that the Yeshiva is a function of a Jewish house of worship may be accurate. The problem is that from a land use perspective, the Yeshiva has resulted in a significant increase in the intensity of the use. A variance is necessary since the Yeshiva is an expansion of an already nonconforming use.

The Board noted that although a house of worship may have religious classes, in this instance the students were outside late at night, an activity that was not a religious exercise. It determined that the Yeshiva was now a boarding school, with six junior rabbis living in the residence and students residing in a home on another property. The Board took note that the lease between the Yeshiva and the Congregation contained provisions allowing for further expansion, and determined that "[m]unicipal overview of such a proposal is necessary to protect the public health and safety and the integrity of the zone plan."

The Board determined that filing a variance application would not substantially burden the Congregation and the Yeshiva. It noted that "[n]othing in the [ ] decision on this appeal should be interpreted as being opposed to the establishment of the Yeshiva on the property." It concluded that "[t]he sole decision rendered is that land use approval is required and the Zoning Officer erred in allowing the Yeshiva to be established without such approvals.... [T]he Zoning Officer erred in that the proposal is a significant intensification of the non-conforming use and should not have been allowed as of right without any municipal review or approval."

On appeal, the Congregation and the Yeshiva urge that the matter is ripe for review because the Board's decision was a final determination on: (1) the issue of whether the Yeshiva is a house of worship use, and therefore is permitted as a pre-existing conditional use; and (2) the application of the zoning regulations to the property.[3]

Ripeness is a jurisdictional inquiry, rooted in both the case or controversy requirement of our Constitution's Article III and judge-made prudential limitations on the exercise of judicial authority. *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir.2005) (citing *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733 n. 7, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997)). The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements...." *Abbott Labs. v. Gardner,*

---

**3.** We exercise plenary review over the District Court's dismissal of the complaint for failure to state a claim under Rule 12(b)(6). *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). We must " 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.' " *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir.2002)).

387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

In *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court developed specific ripeness requirements for land use disputes. It held that the takings claim at issue was "not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186, 105 S.Ct. 3108. Subsequent decisions applied this ripeness requirement to land use disputes implicating other constitutional claims. *See Murphy,* 402 F.3d at 350 (Free Exercise Clause and RLUIPA claims); *Taylor Inv., Ltd. v. Upper Darby Twp.,* 983 F.2d 1285 (3d Cir.1993) (due process and equal protection action under 42 U.S.C. § 1983).

The Court in *Murphy* explained that the finality requirement of the ripeness inquiry: (1) aids in the development of a full record; (2) provides the court with knowledge as to how a regulation will be applied to a particular property; (3) may obviate the need for the court to decide constitutional disputes if a local authority provides the relief sought; and (4) shows "the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." 402 F.3d at 348 (internal citations omitted).

The Congregation and the Yeshiva argue that there is a final determination by the Board that the Yeshiva is not a house-of-worship use, and is therefore in violation of the local zoning ordinance. The Congregation and the Yeshiva assert that the ordinance has no application to the Yeshiva use because it is a component of the pre-existing and protected house-of-worship use.

This argument, however, is based on the mistaken belief that the Board determined that the Yeshiva was not a permitted use. It did not do so. Instead, the Board determined that it "may be accurate" that the Yeshiva is a function of a house of worship, but the problem was that it resulted in a significant increase in the intensity of that use and, therefore, a variance was necessary to consider the effect on the neighborhood. *See, e.g., Sterngass v. Town of Woodbury,* 433 F.Supp.2d 351, 354–55 (S.D.N.Y.2006) (acknowledging that plaintiff had the right to continue existing non-conforming uses, but not to expand or change the non-conforming uses). In short, the Board did not determine that the Yeshiva was not a house of worship and thereby a violation of the ordinance. The Board's resolution speaks only to its determination that the Yeshiva represents an intensification of use requiring a variance.

The Congregation and the Yeshiva also argue that there is a final determination by the Board regarding the application of the regulations to the property at issue. We consider whether the Board's resolution was such a final determination, making the RLUIPA claim ripe for review, by examining the facts and the claim in light of the four considerations outlined by the Second Circuit Court in *Murphy.*[4]

---

4. The Congregation and the Yeshiva argue that the Board's Resolution was a final definitive position regarding how it will apply the regulations to the property because when a board extensively considers a land use appeal, as it did here, a variance application is not necessary.

   In *Murphy,* the zoning officer issued a cease-and-desist order that the plaintiffs did not appeal before filing a complaint alleging violations of the First Amendment and RLUI-

RLUIPA, "'the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burden,'" addresses, among other things, land use regulations. *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch,* 510 F.3d 253, 261 (3d Cir.2007) (quoting *Cutter v. Wilkinson,* 544 U.S. 709, 714, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005)). The land-use section of the statute is divided into two subsections, which provide:

(a) Substantial burdens

(1) General rule

No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

. . . . .

(b) Discrimination and exclusion

. . . . .

(2) Nondiscrimination

No government shall impose or implement a use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

. . . . .

42 U.S.C. § 2000cc(a), (b). "The use, building, or conversion of real property for the purpose of religious exercise shall be considered ... religious exercise." *Id.* § 2000cc–5(7)(A), (B). A plaintiff asserting a claim under the RLUIPA substantial burdens provision must show that the board's action was a substantial burden on religious exercise, was not done in furtherance of a compelling government interest, and not imposed in the least restrictive manner. *See Westchester Day Sch. v. Vill. of Mamaroneck,* 386 F.3d 183, 190 (2d Cir.2004).

The factual record is not sufficiently developed to decide fully the RLUIPA claim here, and the Board has not issued a definitive position as to the extent the Yeshiva can operate on the synagogue property. If the Congregation and the Yeshiva apply for a variance, the Board would develop a record to determine the potential effect of the use, and whether (and, if yes, to what extent) the use is permitted. As the District Court noted, this would allow the Board to collect information about the exact population of the Yeshiva, the degree to which traffic increased, whether and

---

PA. The Second Circuit Court determined that the claim was not ripe because the plaintiffs did not appeal to the board. 402 F.3d at 352. It also noted that the failure to apply for a variance deprived the court of any certainty as to what use the property would be permitted. *Id.* at 353.

In *Taylor,* the plaintiffs' use permit was revoked. We noted that the plaintiffs did not reapply for the use permit, appeal the revocation, or seek a variance, but rather, "instead of taking one of these actions," challenged the revocation of the use permit under the Fourteenth Amendment. 983 F.2d at 1289.

Therefore, we held that the claims were not ripe because the Township had not rendered a final decision regarding the permit revocation. *Id.* at 1292.

While it is true that the plaintiffs in *Murphy* and *Taylor* did not seek any review of an initial land use decision, as the Congregation did here, it does not necessarily follow that a decision by a board on appeal is a final determination ripe for federal review. Nor can we say that a variance application is always necessary to satisfy the finality requirement. The cases are fact-specific.

how much time students spend out on the streets, and the Yeshiva's plans for growth. We do not have a record of this currently before us. We also do not know how the Board will apply the zoning ordinance to the synagogue property. The Board may decide to allow the Yeshiva to operate fully, it may place some restrictions, or it may deny any operation of the Yeshiva on the property.

Permitting the Board to reach a final determination on a variance application may resolve the constitutional issues the Congregation alleges. For starters, it is not apparent that the Congregation has suffered any constitutional injury simply because it must apply for a variance; indeed, it appears the Yeshiva is still operating at the synagogue. Put simply, we do not know the extent, if any, of the Congregation's alleged RLUIPA injury without a final determination as to whether the Yeshiva will be permitted on the property. We do not even have a complete record from which we can address and determine the issue of whether there has been any burden on the Congregation and the Yeshiva, and whether that burden is a result of a compelling government interest and is implemented in the least restrictive means. *See, e.g., Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 616 (6th Cir.2008) (finding RLUIPA claim not ripe because record was devoid of efforts by the church to complete the factual record, explain its position to the commission, or appeal to the board).

Finally, we have stressed "the importance of the finality requirement and our reluctance to allow the courts to become super land-use boards of appeals. Land-use decisions concern a variety of interests and persons, and local authorities are in a better position than the courts to assess the burdens and benefits of those varying interests." *Sameric Corp. of Delaware, Inc. v. City of Phila.*, 142 F.3d 582, 598 (3d Cir.1998).[5]

We thus affirm the District Court's dismissal of the complaint.

---

**5.** The Congregation and the Yeshiva filed, on September 17, 2008, an action in lieu of prerogative writs in the Superior Court, Law Division, Monmouth County, New Jersey, against the Board and the Roosevelt Preservation Association (the Borough is a third-party defendant), appealing the decision of the Board. They argue that the decision of the state court in this matter, which denied the Board's motion to dismiss on *res judicata* and ripeness grounds, confirms that the Board's Resolution is a final position subject to judicial review. *See Congregation Anshei v. Board*, No. MON–L–43086–08 (N.J.Super.Ct., Feb. 2, 2009) at A393. Whether the state-law claims are ripe under New Jersey law is distinct from whether the federal claims are ripe for review. Thus, we do not consider the state action to dispose of the issue before us. *See MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1109 (3d Cir.1995) (federal court looks to federal, not state, law to determine jurisdiction).