NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0096n.06

No. 08-2639

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 16, 2010**
LEONARD GREEN, Clerk

MYLES SINCLAIR,

        Plaintiff-Appellant,

    v.

CITY OF ECORSE, et al.,

        Defendants-Appellees.

On Appeal from the United States
District Court for the Eastern
District of Michigan

BEFORE:  MOORE, KETHLEDGE, Circuit Judges; and BERTELSMAN,[*] District Judge.

BERTELSMAN, District Judge:

Plaintiff-Appellant, Myles Sinclair ("Sinclair"), appeals from the district court's grant of

summary judgment to Defendant-Appellant, The City of Ecorse, Michigan ("the City").  Sinclair

sued the City and some of its officials for refusing to grant him a certificate of occupancy for a house

and lot he had purchased from Wayne County at a tax sale.

The only issue in this appeal is Sinclair's claim for denial of procedural due process.  The

district court granted summary judgment on that claim on the ground that Sinclair had no property

interest that entitled him to procedural due process.  The district court reasoned that because Sinclair

had acquired his title from the County, and the County is not a "person" that is entitled to due

process, the property interest in the nonconforming use ended automatically during the County's

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District
of Kentucky, sitting by designation.

period of ownership of the real estate and without the need for notice or a hearing. In sum, the district court determined that Sinclair could not have acquired an interest that the County, itself, did not have.

We have some reservations with regard to that holding, because it seems to us that, when acting in a proprietary capacity, a county might well be entitled to due process. However, we need not reach this issue or decide whether Sinclair otherwise purchased the property with a continuing viable nonconforming use because, even assuming that he had an existing property right in the nonconforming use, a careful examination of the record before us reveals that Sinclair received all the process that was due. We thus **AFFIRM**.

*FACTUAL AND PROCEDURAL BACKGROUND*

A timeline is helpful in understanding the material facts of this case.

Sometime prior to November 2003, Wayne County acquired title to property located at 4315 Sixth Street in the City of Ecorse, Michigan pursuant to a tax foreclosure. In November 2003, Sinclair purchased that property from the County at a tax sale. At that time, water service to the property had been turned off for approximately two and a half years. Nonetheless, there were squatters who had been occupying the property for an undetermined period of time. In January 2004, Sinclair obtained an eviction order to remove the squatters and their belongings.

On February 24, 2004, the City posted at the property a notice stating that a Certificate of Occupancy or Use Permit was required before the property could be legally occupied. Sinclair applied for such a certificate the same day.

By letter dated February 27, 2004, a City building official advised Sinclair of the type information (site plans, etc.) that the City would need "to determine if [the] property is non-

conforming."

On March 8, 2004, the same official advised the mayor in writing that Sinclair's application had been denied because the property failed to conform to the City's minimum floor area and setback requirements. Those requirements are set forth in the City's current zoning ordinance, which was passed in 1983. Therefore, under that ordinance, a certificate of occupancy could not be issued unless Sinclair was entitled to the benefit of a nonconforming use, that is, a use of the property that pre-dated the zoning ordinance.

At one time, a nonconforming use was applicable to the property in question, because a house that was inconsistent with the setback and yard requirements was on the property when the zoning ordinance was adopted. However, the zoning ordinance provides:

> When a nonconforming use of a structure, or structure and premises in combination is discontinued or ceases to exist for a period of six (6) consecutive months or for a period of eighteen (18 ) months during any three (3) year period, the structure, or structure and premises in combination shall not thereafter be used except in conformance with the regulations of the district in which it is located. Structures occupied by seasonal uses are exempt from this provision.

Ecorse, Mich. Zoning Ordinance art. 11, § 11.002(e)(5).

The City thus denied Sinclair's application for a certificate of occupancy because the building official ruled that the nonconforming use had lapsed because the property had been abandoned for more than two years, the water having been turned off for that time.

The City advised Sinclair that he could appeal this ruling by submitting an application to go before the Board of Zoning Appeals. No restrictions were placed on the issues that Sinclair could raise before the Board.

On September 20, 2004, Sinclair filed an "application" with Zoning Board of Appeals requesting a hearing before the Board to "obtain [a] variance to allow [the] owner to repair,

rehabilitate property, to obtain building permits allowing same."

A public hearing on Sinclair's application was held on October 18, 2004, the minutes of which are in this record. These minutes reflect that the Board considered all matters that Sinclair raised. Sinclair was represented by an attorney, who made several arguments on his behalf as to why the desired nonconforming use should be allowed. Sinclair argued principally that the property had not been abandoned, because he had observed people living there before he bought it and that he had been required to evict them. The members of the board observed that these persons were "squatters" and, as noted above, that the occupancy was illegal, as evidenced by the fact that the water had been turned off. Some members observed that Sinclair had not exercised due diligence in researching the property before purchasing it.

One of the property's neighbors was also heard. It is noteworthy that there is no indication in the minutes that Sinclair offered to bring before the Board any evidence in addition to that reflected by the minutes, nor does Sinclair contend that the minutes are in any way inaccurate.

Therefore, the Board ruled that the nonconforming use had lapsed and the certificate of occupancy could not be issued. At the conclusion of the hearing, the Zoning Board of Appeals voted to deny Sinclair's application.

Michigan statutes provide that those aggrieved by decisions of the Board of Zoning Appeals may appeal to the county circuit court. *See* Mich. Comp. Laws Ann. § 125.585(11) (1997).

Sinclair availed himself of this statute and appealed to the Circuit Court for Wayne County. The record on appeal indicates that the City's brief to the Circuit Court raised the issue of whether the viable nonconforming use had been abandoned. The court affirmed the decision of the board without opinion. We note that this dismissal constitutes an implicit finding that the procedures used

4

by the Board were proper. *See id.*

Sinclair then appealed to the Michigan Court of Appeals, which dismissed the appeal for lack of jurisdiction on September 16, 2005.[1]

Sinclair filed this federal lawsuit on May 16, 2007, asserting, as is relevant here, that defendants violated his federal rights by not providing him with a hearing prior to terminating the property's nonconforming use. The district court granted defendants' motion for summary judgment by order dated June 19, 2008. Sinclair timely appealed.

### *Analysis*

The above facts are not in dispute and thus only issues of law were presented to the district court. Therefore, the case was appropriate for disposition on summary judgment.

Some years ago, we had occasion to summarize customary state zoning law and its relationship to federal constitutional law. *Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992).

There, we observed that zoning involves both legislative and administrative functions, which are executed by different local bodies and officials. *Id.* at 1220-21. This case concerns only the administrative aspect of zoning. Among the administrative functions is the application of the zoning ordinance to individual pieces of property, such as we have here. *Id.* at 1218. The administrative setup we see in this case is typical. An official, usually known as the "building inspector" or "zoning official," makes a preliminary determination when a particular piece of property is sought to be developed or improved. This determination includes whether the property conforms to the zoning

---

[1]Apparently, an appeal to the Michigan Court of Appeals did not lie as a matter of right, and the proper procedures to seek discretionary review had not been followed.

ordinance or, if not, whether there is a viable nonconforming use. Following this preliminary determination, the landowner may appeal a decision that the property is nonconforming to the Zoning Board of Appeals by seeking a variance – *i.e.*, a "license to use property in a way not permitted under an ordinance," *Paragon Props. Co. v. City of Novi*, 550 N.W.2d 772, 774 (Mich. 1996) – on grounds such as hardship or based on the unusual features of the property. In addition to seeking a variance, however, the landowner may also contest the designation that the property was properly classified as nonconforming in the first place. *See, e.g.*, *Bialik v. Stambaugh Twp.*, No. 276281, 2008 WL 1885772, at *1 (Mich. Ct. App. Apr. 29, 2008).

Due process requires that individual notice be given to those affected by these administrative decisions. However, "where a pre-deprivation hearing is impracticable or quick action is necessary, a post-deprivation hearing may be adequate." *Mator v. City of Ecorse*, 301 F. App'x 476, 479 (6th Cir. 2008) (citing *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994)).

Sinclair argues here that he should have been given notice that the nonconforming use had lapsed at the time the lapse occurred. However, as the above discussion illustrates, this lapse occurred months or years before Sinclair bought the property. Therefore, it was not only impracticable but (since the City is not possessed as far as we are aware of a crystal ball) impossible to give Sinclair notice at that time.

As the above chronology further shows, the City did give Sinclair notice shortly after he purchased the property that its position was that the nonconforming use had lapsed. The City also advised Sinclair how to seek administrative review of this decision by submitting an application to the Zoning Board of Appeals. He sought such review. Nothing in this record indicates that Sinclair was in any way precluded from making any argument he wished to make, either to the zoning official

6

or the Zoning Board of Appeals.

Sinclair made his arguments and the decision went against him. He makes no assertion here that this decision was arbitrary and capricious, which would be necessary to attack it as a violation of substantive due process. *See Pearson*, 961 F. 2d at 1221-22.

As noted, Sinclair's sole argument on appeal is that his right to *procedural* due process was violated. However, we hold that Sinclair's appeal to the Board of Zoning Appeals, the hearing held therein, and the judicial review that followed afforded him complete procedural due process.

Sinclair argues that he was never afforded a hearing on the issue of whether the County had intended to abandon the nonconforming use.[2] The law is clear, however, that the Board of Zoning Appeals had jurisdiction to consider that issue, had Sinclair raised it. Indeed, the minutes reflect that it was tried by implication.

Mich. Comp. Laws Ann. § 125.585 (1997), in effect at the time of these events, provided:

> (3) The board of appeals shall hear and decide appeals from and review any order, requirements, decision, or determination made by an administrative official or body charged with the enforcement of an ordinance adopted under this act. The board of appeals shall also hear and decide matters referred to the board or upon which the board is required to pass under an ordinance of the legislative body adopted under this act. . . .
>
> . . . .
>
> (5) An appeal may be taken by a person aggrieved, or by an officer, department, board, or bureau of the city or village. . . .
>
> . . . .
>
> (8) The board of appeals shall fix a reasonable time *for the hearing of the appeal and*

---

[2] In *Rudnik v. Mayers,* 196 N.W.2d 770 (Mich. 1972), the Supreme Court of Michigan held that mere lack of use was an insufficient basis of abandonment of a nonconforming use and that there had to be some evidence of an intent to abandon to support a finding that the nonconforming use had lapsed.

*give due notice of the appeal* to the persons to whom real property within 300 feet of the premises in question is assessed, and to the occupants of single and 2-family dwellings within 300 feet, the notice to be delivered personally or by mail addressed to the respective owners and tenants at the address given in the last assessment roll. The board of appeals shall decide the appeal within a reasonable time. If the tenant's name is not known, the term occupant may be used. *Upon the hearing, a party may appear in person or by agent or by attorney.*

(9) *The board of appeals may reverse or affirm, wholly or partly, or may modify the order, requirement, decision, or determination appealed from and shall make an order, requirement, decision, or determination as in the board's opinion ought to be made in the premises, and to that end shall have all the powers of the officer or body from whom the appeal is taken.* If there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of the ordinance, the board of appeals may in passing upon appeals vary or modify any of its rules or provisions relating to the construction, or structural changes in, equipment, or alteration of buildings or structures, or the use of land, buildings, or structures, so that the spirit of the ordinance shall be observed, public safety secured, and substantial justice done.

. . . .

(11) The decision of the board of appeals shall be final. However, a person having an interest affected by the zoning ordinance may appeal to the circuit court. *Upon appeal, the circuit court shall review the record and decision of the board of appeals to insure that the decision meets all of the following:*
   (a) Complies with the constitution and laws of this state.
   (b) *Is based upon proper procedure.*
   (c) *Is supported by competent, material, and substantial evidence on the record.*
   (d) *Represents the reasonable exercise of discretion granted by law to the board of appeals.*

*Id.* (emphasis added).

The plain meaning of this statute is that the Board could have considered any argument the landowner could have made or did make to "the officer . . . from whom the appeal" was taken.[3]

Sinclair did argue that there was no abandonment because people were living in the property when

---

[3]Apparently, this statute was not called to the attention of the court in *Mator v. City of Ecorse,* 301 F. App'x 476 (6th Cir. 2008), leading the court to conclude that the variance procedure "offered no means to oppose the City's determination of vacancy or its decision to rescind the properties' viable-non-conforming-use status." *Id.* at 480.

he bought it. The Board pointed out, however, that there had been an abandonment because those individuals were merely squatters and the water had been turned off for two years. Thus, Sinclair's argument was considered. He undoubtedly raised (or could have raised) it again in his state judicial appeals. The record reflects no effort on Sinclair's part to put on any other evidence, or any specific mention of the County's intent to abandon, or lack thereof, or any complaint before the Board about the procedures used. Sinclair did not contest the statement that the water had been turned off for two years, which was certainly some evidence of the County's intent to abandon the nonconforming use.[4]

Again, Sinclair has abandoned all claims before this court except lack of procedural due process. We conclude that the requirements of the Due Process Clause were observed.

We AFFIRM.

---

[4]Plaintiff relies on *Nasierowski Bros. Inv. Co. v. City of Sterling Heights,* 949 F.2d 890 (6th Cir. 1991), for the proposition that the right to file an application for a variance does not afford sufficient due process. This case refers only to due process in the planning and legislative stage, *i.e.*, that where the City proposes to zone one's property, the right to file later for a variance is not a substitute for due process at the planning stage. *Cf. Brody v. City of Mason*, 250 F.3d 432, 435, 437-38 (6th Cir. 2001) (no violation of procedural due process in administrative portion of zoning process relating to approval of paving; plaintiff appealed to Zoning Board of Appeals and was heard at hearing); *Dubuc v. Green Oak Twp.*, 642 F. Supp.2d 694, 703-05 (E.D. Mich. 2009) (holding, under more recent Michigan statute, that there was no violation of right to procedural due process; key is that plaintiff had opportunity to be heard regarding alleged nonconforming use of his property, and he had right to appeal to Zoning Board of Appeals and state court). Plaintiff also relies on the unpublished district court decision in *Holly v. City of Ecorse*, No. 05-74238, 2006 WL 2727006 (E.D. Mich. 2006), but in that case the landowner was afforded neither a pre- nor post-deprivation hearing.