NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0049n.06

No. 09-1928

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jan 19, 2011**

LEONARD GREEN, Clerk

DENNIS DUBUC and CAROL DUBUC,    )
                                 )
    Plaintiffs-Appellants            )
                                 )
    v.                               )
                                 )
TOWNSHIP OF GREEN OAK, MARK ST.  )
CHARLES, MICHAEL KRUSZEWSKI and KIM )
HUNT,                            )
                                 )
    Defendants-Appellees,            )
                                 )
MICHAEL E. ROSATI,               )
                                 )
    Defendant.                       )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE: KENNEDY, COLE, and ROGERS, Circuit Judges.

**ROGERS, Circuit Judge.** Plaintiffs Dennis and Carol Dubuc, property owners in the Township of Green Oak, have sought to make a federal case out of zoning determinations made by the Township. The Dubucs filed suit against defendants—the Township and various planning and zoning officials—alleging that the Dubucs were deprived of their property interests without due process and that they were retaliated against in response to their filing suit. The district court denied the Dubucs' motion for partial summary judgment and granted defendants' motion for summary judgment. On appeal, the Dubucs argue that they did not receive the required notice and opportunity to be heard before they were deprived of a protected interest in the nonconforming use of their

property, and that they were not required to show actual permit denials in order to establish that their First and Fourteenth Amendment retaliation claim was ripe for review. Because the Dubucs were provided adequate notice and an opportunity to be heard, and because no final determination was ever reached as to any of the Dubucs' permit applications, the district court properly granted summary judgment in favor of defendants.

## I.

In February 2007, the Dubucs purchased two adjoining pieces of property in the Township of Green Oak from the Estate of Russell B. Armstrong. Armstrong appears to have owned the property from 1966 until his death in November 2005, at which point the property became a part of his estate. While Armstrong owned the property, it underwent a number of changes in its zoning classification, which eventually led to its being zoned single-family residential. However, the Dubucs allege that the property "had been openly used for both indoor and outdoor commercial storage, with offices, and manufacturing with retail sales as well as for a contractor storage equipment yard with signage for over 40 years." Accordingly, the Dubucs argue that this use constituted a legal, prior nonconforming use and that they should be permitted to continue to use the property for these purposes.

Shortly after the Dubucs purchased the property from Armstrong's estate, Mr. Dubuc visited Green Oak Township's Building Department in order to seek information about permits for renovating the property. According to the Dubucs, first Lisa Brookins, a planning official for the Township, and then Kim Hunt, a zoning enforcement official for the Township, informed Mr. Dubuc

that the property was zoned residential and could not be used for commercial purposes. Brookins allegedly told Mr. Dubuc that he could speak with defendant Michael Kruszewski, a building official for the Township, regarding the property. The Dubucs claim that later Mr. Dubuc did speak with Kruszewski, and that Kruszewski also stated that the property could not be used for commercial purposes. The Dubucs contend that "this is the first known time in which the Township communicated to an owner of the property that the prior non-conforming use could not be continued." On March 20, 2007, Mr. Dubuc sent Kruszewski a letter asking that he address his "position concerning [the] non-conforming use of this property," because, as Mr. Dubuc noted, he intended to continue the property's nonconforming use. With this letter, Mr. Dubuc also sent information, which he believed supported his position regarding the historic nonconforming use of the property for commercial outdoor storage. On April 2, 2007, Kruszewski sent his response to Mr. Dubuc, which stated that he had reviewed the information and visited the site, and, accordingly, determined: "The property has historically been used as a commercial operation, most recently as an indoor storage. Thus, this use is the legal non-conforming use pursuant to our ordinance."

Instead of directly appealing this determination, Mr. Dubuc filed an application with the Township's Zoning Board of Appeals (ZBA) on September 5, 2007, requesting a change in nonconforming use and a variance to allow two ground signs. After a hearing on October 16, 2007, the ZBA voted to deny Mr. Dubuc's application. Following the denial of his request for reconsideration, Mr. Dubuc sent a letter to the Township Board on January 29, 2008, asking for a special meeting concerning his requests regarding the non-conforming use of the property. This was

not granted.  The Dubucs filed suit in federal district court on August 29, 2009, alleging procedural

due process violations.  Named defendants were Green Oak Township; Mark St. Charles, in his

official capacity as a Township Supervisor and in his individual capacity; Michael Kruszewski, in

his official capacity as Building Zoning Administrator and in his individual capacity; and Kim Hunt,

in her individual capacity.

During this back-and-forth, the Township issued the Dubucs a plumbing permit and a

mechanical permit for renovation of the property, but added a limitation to both noting that the

nonconforming use of the property was for indoor storage only.  However, after the Dubucs filed

suit, the Dubucs allege that Kruszewski refused to process any more of their permit requests, and that

he did so in retaliation for the Dubucs' legal action.  The Dubucs state the following actions were

taken with respect to their requests for permits:

a)      Prior to the initial complaint being filed, Plaintiff Dennis Dubuc applied for, and received permits to extensively renovate a fire damaged building on the property.  However, after the Complaint was filed, his September 18, 2008 permit to rebuild a bath and office on the subject property was denied, despite the fact that the electrical and plumbing permits had already been issued (prior to this lawsuit) for the same bath and office.  Plaintiff Dennis Dubuc was told by Defendant Kruszewski that no further permits could be issued for the subject property pursuant to the advice of Township Attorney Michael Rosati.  Defendant Kruszewski told Plaintiff Dubuc that if he had any questions as to why permits could not be issued that she [sic] should call attorney Michael Rosati.

b)      On September 5, 2008 Defendants issued a permit to Preston Electric to provide electrical service to a small restroom, office and a radiant tube heating system at the subject property, in two separate buildings.  However, after this lawsuit was filed, Preston's September 26, 2008 permit request was rejected.  Preston was advised by the Township that they were told by the Township attorney not to issue any further permits for [the property at issue].

c)      On August 22, 2008, Radiant Energy Systems, Inc. applied for and received mechanical permits from Defendants to install heating systems on the subject property. However, Radiant's October 10, 2008 permit was rejected. Radiant was told by the Green Oak Township Building Department that the permit request would not be processed because of the Plaintiff"s lawsuit.[1]

These actions prompted the Dubucs to seek leave to amend their complaint to include a retaliation claim against Kruszewski pursuant to the First and Fourteenth Amendments and to add the Township's legal counsel, Michael E. Rosati in his individual capacity, as a named defendant to the suit.[2] The court granted leave to amend on December 15, 2008.

On March 10, 2009, the Dubucs filed a motion for partial summary judgment, asking the court to enter an order in their favor regarding defendants' liability and to set the case for trial on the issue of damages. On April 27, 2009, the defendants filed their own motion for judgment on the pleadings or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) and/or 12(b)(6). In this motion, the defendants alleged that the Dubucs had failed to establish a procedural due process claim because they did not have a protected property interest and because they received notice and an opportunity to appeal Kruszewski's determination to the ZBA and then in state court. Moreover, the defendants argued that the individual defendants, St. Charles,

---

[1]Though these dates indicate that at least one permit was issued after the Dubucs filed suit, the Dubucs contend that any permits issued after the suit was filed were only issued because the defendants were not yet aware that the suit had been filed since they had not yet been served. The Dubucs allege that once the defendants became aware of the filing of the suit, they stopped issuing the Dubucs permits.

[2]However, the parties later stipulated to the court's dismissal, with prejudice, of Rosati from the suit.

Kruszewski, and Hunt, were entitled to qualified immunity, and that they were entitled to dismissal of the official-capacity claims against them, because the Dubucs' amended complaint did not refer to any custom, policy, or practice of the Township that gave rise to the alleged violation. Finally, the defendants argued that the Dubucs failed to establish a valid retaliation claim against Kruszewski, because the Dubucs presented no evidence that they were actually denied any permits and because a retaliation claim is not ripe for review until a permit is applied for and denied.

On June 26, 2009, the district court issued an order denying the Dubucs' motion for partial summary judgment and granting defendants' motion for summary judgment. *Dubuc v. Green Oak Twp.*, 642 F. Supp. 2d 694 (E.D. Mich. 2009). In regard to the Dubucs' procedural due process claim, the district court first noted that "[b]oth parties agree that, under Michigan law, a prior, non-conforming use is a protected property right and is accordingly subject to due process protections." *Id.* at 701. The court found that the relevant date of the determination resulting in the alleged deprivation of this protected property right was April 2, 2007. *Id.* at 703. The district court found that the Dubucs had notice of this April 2, 2007 deprivation because they put together information and presented it to Kruszewski before the determination was made. *Id.* Moreover, the district court found that the Dubucs had an opportunity to be heard regarding this deprivation through their right to appeal the zoning determination to the ZBA and, ultimately, to the state circuit court. *Id.* at 704-05. The district court explained that "[d]ue process is not violated when Plaintiffs simply do not avail themselves of the opportunity to have a hearing on their claim." *Id.* at 705.

Accordingly, the district court found that the Dubucs could not maintain a claim for violation of procedural due process.

In regard to the Dubucs' retaliation claim, the district court focused on the defendants' ripeness argument. The district court noted that this court "has found that a finality determination in connection with 'various constitutional claims arising out of land disputes requires that the government entity charged with implementing the regulations must have reached a final decision regarding the application of the regulations to the property at issue.'" *Id.* at 706 (quoting *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008)). Moreover, the district court explained, "in order for a retaliation claim regarding land use to be ripe, there must be a final determination by the 'government entity charged with implementing the regulations.'" *Id.* (quoting *Grace Cmty. Church*, 544 F.3d at 615-16). Because the Dubucs had failed to show any denial or final decision in regard to their permit applications, the district court found that the Dubucs' retaliation claim was not ripe for review. *Id.* Thus, the district court granted the defendants' motion for summary judgment. *Id.* The Dubucs now appeal.

## II.

The district court properly granted summary judgment for defendants on the Dubucs' procedural due process claim. This court reviews de novo a district court's grant of summary judgment. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The Dubucs pursued their

procedural due process claim through a 42 U.S.C. § 1983 cause of action.

> To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.

*Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

Even if we assume that the Dubucs were deprived of a protected property interest in the

nonconforming use of their property,[3] summary judgment was still appropriate as the Dubucs'

received ample process. "Generally, the process that is due before a property deprivation includes

prior notice and an opportunity for a predeprivation hearing." *Warren v. City of Athens, Ohio*, 411

F.3d 697, 709 (6th Cir. 2005) (citing *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994)).

The Dubucs cannot claim that they did not have prior notice of this alleged deprivation, as they have

admitted that Mr. Dubuc submitted letters with information regarding the nonconforming use of the

property to Kruszewski on March 20, 2007 and March 23, 2007. This shows that Mr. Dubuc had

---

[3]The Michigan Supreme Court stated in *Heath Twp. v. Sall*, 502 N.W.2d 627, 629 (Mich. 1993), that a "prior nonconforming use is a vested right in the use of a particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date." Because the available process in this case was obviously adequate, we express no opinion on whether there was a property interest for federal due process purposes, and if so whether the determination in this case amounted to a deprivation of the interest. *See Hussein v. City of Perrysburg*, 617 F.3d 828, 832 (6th Cir. 2010) (holding that merely giving notice that a particular use of property is illegal does not amount to a deprivation of a property interest).

actual notice of the impending determination. In fact, Mr. Dubuc essentially initiated the alleged

deprivation by requesting that an official determination be made.[4]

In regard to a predeprivation hearing, we have explained,

> The predeprivation process need not always be elaborate, however; the amount of
> process required depends, in part, on the importance of the interests at stake. . . .
> Moreover, the sufficiency of predeprivation procedures must be considered in
> conjunction with the options for postdeprivation review; if elaborate procedures for
> postdeprivation review are in place, less elaborate predeprivation process may be
> required. In some cases, postdeprivation review may possibly be sufficient, and no
> predeprivation process is required.

*Leary v. Daeschner*, 228 F.3d 729, 742-43 (citations omitted). The Dubucs were given an

opportunity to be heard on a number of occasions.[5] Prior to Kruszewski's determination, the Dubucs

---

[4]In their reply brief, the Dubucs insist that the determination regarding the prior
nonconforming use of their property was made prior to Mr. Dubuc's requesting an official
determination from Kruszewski, which suggests that they did not receive the appropriate notice.
However, in *Sinclair v. City of Ecorse*, this court rejected a similar argument by stating,

> [The plaintiff] argues here that he should have been given notice that the
> nonconforming use had lapsed at the time the lapse occurred. However, . . . this
> lapse occurred months or years before Sinclair bought the property. Therefore, it was
> not only impracticable but (since the City is not possessed as far as we are aware of
> a crystal ball) impossible to give Sinclair notice at that time.

366 F. App'x 579, 583 (6th Cir. 2010).

[5]The steps taken by the Township in this case fall in line with the normal processes when
making zoning determinations. This court noted as much in *Sinclair*, when we explained,

> The administrative setup we see in this case is typical. An official, usually known
> as the "building inspector" or "zoning official," makes a preliminary determination
> when a particular piece of property is sought to be developed or improved. This
> determination includes whether the property conforms to the zoning ordinance or, if
> not, whether there is a viable nonconforming use. Following this preliminary
> determination, the landowner may appeal a decision that the property is

were able to submit information in support of their position regarding the non-conforming use of the property. In fact, the Dubucs even admit that Kruszewski requested additional information regarding the intended use of the property and that the Dubucs were given an opportunity to submit further explanations in this regard. After Kruszewski's determination, the Dubucs had the ability to appeal his decision to the ZBA and then to the state circuit court,[6] but they did not take advantage of these opportunities.[7]

The process provided to the Dubucs did not violate the due process clause. In *Mathews v. Eldridge*, the Supreme Court laid out three factors to be considered when determining whether the

---

nonconforming to the Zoning Board of Appeals by seeking a variance—*i.e.*, a "license to use the property in a way not permitted under an ordinance,"—on grounds such as hardship or based on the unusual features of the property. In addition to seeking a variance, however, the landowner may also contest the designation that the property was properly classified as nonconforming in the first place.

366 F. App'x at 583.

[6]Specifically, the Township's ordinances permit "an appeal [to] be taken to the ZBA by any person . . . affected by a decision of any body charged with enforcement of this chapter or of an administrative official of the department of building and zoning concerning the administering and enforcing of the provisions of this chapter." Green Oak Charter Township, Mich., Code ch. 38, art. II, div. 3, § 38-94(a) (1998). The appeal must be taken within thirty days of the decision being appealed. *Id.* Moreover, the appeal "shall stay all proceedings in furtherance of the action appealed from, unless the building administrator certifies to the ZBA . . . that . . . a stay would, in his opinion, cause imminent peril to life or property." *Id.* at § 38-94(b). In addition, state law provides that "[a] party aggrieved by the decision [of the ZBA] may appeal to the circuit court for the county in which the property is located." Mich. Comp. Laws § 125.3605.

[7]Though the Dubucs did seek a variance on the property—to change the nonconforming use to "commercial office and contractor equipment and material storage yard" on Parcel No. 1 and to "commercial RV sales, service, repair and RV storage" on Parcel No. 2—and received a hearing in relation to this request, they never directly appealed the nonconforming-use determination itself to the ZBA.

process provided was adequate: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

In this case, the Dubucs assert an interest in avoiding lost business because of the inability to offer outdoor storage, alleging that the property will suffer a twenty-five-percent reduction in its market value without this non-conforming use. However, the Township's interest in ensuring that the property is used for the proper purpose is also important, as the Township must protect the interests of the Township's citizens. The final factor is the most significant in this case, as the Dubucs have failed to demonstrate why the procedures provided do not adequately protect their interests, or, in other words, they have not shown that they suffer a great risk of being erroneously deprived of their property interest or that some other substitute procedure would be more valuable. In fact, because the Dubucs did not even take advantage of all of the procedures available to them, it would be difficult for them to argue the inadequacy of the procedures. If the Dubucs had as much convincing evidence regarding the property's prior use as they claim they did, a direct appeal to the ZBA could have relieved them of Kruszewski's adverse determination.[8] Moreover, the Township's

---

[8]The Dubucs challenge any reliance on these appellate procedures because "a post-deprivation appeal to an administrative body such as the ZBA does not allow an aggrieved party the opportunity to assert constitutional questions." *See Houdini Props., LLC v. City of Romulus*, 743 N.W.2d 198 (Mich. 2008). This argument is incoherent. The statement assumes that what the Dubucs would be raising before the ZBA are their procedural due process arguments. Instead, the ZBA would hear the merits of the Dubucs' zoning dispute, that is whether the alleged prior

ordinance provides for a stay of any actions in furtherance of the determination being appealed, which would have allowed the Dubucs to continue the alleged outdoor storage non-conforming use of the property until the ZBA made a final determination. However, the Dubucs did not avail themselves of these opportunities, and they should not be able to now use their inaction against the defendants in claiming a violation of due process. *See Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004) ("A party cannot create a due process claim by ignoring established procedures.").

In *Sinclair v. City of Ecorse*, this court upheld similar processes. 366 F. App'x 579 (6th Cir. 2010). The plaintiff in *Sinclair* sued the city and some of its officials for refusing to grant him a certificate of occupancy, based on the lapse of a nonconforming use, for a house he purchased from the county in a tax sale. *Id.* at 581-82. The plaintiff's sole argument on appeal was that the defendants violated his due process rights "by not providing him a hearing prior to terminating the property's nonconforming use." *Id.* at 582. We noted that "'where a pre-deprivation hearing is impracticable or quick action is necessary, a post-deprivation hearing may be adequate.'" *Id.* at 583 (quoting *Mator v. City of Ecorse*, 301 F. App'x 476, 479 (6th Cir. 2008)). Accordingly, "we h[e]ld that [the plaintiff's] appeal to the [ZBA], the hearing held therein, and the judicial review that followed afforded him complete procedural due process." *Id.* Though the Dubucs did not avail themselves of the appellate processes like the plaintiff in *Sinclair*, that case shows that the postdeprivation review provided, which is much like that which was available to the Dubucs,

---

nonconforming use of outdoor storage is still in effect. Accordingly, this argument is circular and does not support the Dubucs' procedural claims.

satisfies due process. Accordingly, the Dubucs have not shown that they did not receive adequate due process.

**III.**

Because the permit applications filed by the Dubucs were never denied, the Dubucs' constitutional retaliation claim against Kruszewski is not ripe for review. Before the district court even reaches the merits of the Dubucs' retaliation claim, it is permitted to dismiss that claim if it is not ripe for review. "Ripeness is one of several principles of justiciability predicated on both 'Article III limitations' and 'prudential reasons for refusing to exercise jurisdiction,'" and "[t]he doctrine is 'designed to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Insomnia Inc. v. City of Memphis, Tenn.*, 278 F. App'x 609, 612 (6th Cir. 2008) (quoting *Ky. Press Ass'n v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006)). This court has noted three factors to consider in determining if a claim is ripe: "'(1) the likelihood that the harm alleged by [the] plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits . . . ; and (3) the hardship to the parties if judicial relief is denied at [this] stage in the proceedings.'" *Id.* (first and third alterations in original) (quoting *Warshak v. United States*, 490 F.3d 455, 467 (6th Cir. 2007)). The Supreme Court broadened this ripeness inquiry in cases alleging a taking of a property interest by first requiring that the government entity have reached a final decision regarding the interest at issue. *Id.* (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985)). Moreover, we extended this finality requirement "beyond claims of regulatory takings

to various other constitutional claims arising out of land use disputes," including First Amendment

retaliation claims.[9]  *Id.* at 613, 615-16.  Accordingly, the district court was warranted in requiring

a final decision on the Dubucs' permit applications before entertaining their retaliation claim.

The Dubucs have failed to allege any facts to support a finding that their permit applications

were ever actually denied.  In fact, Mr. Dubuc even admitted in his deposition that one of the permits

at issue was never denied, and the Dubucs note in their brief to this court that the electrical permit

in dispute was eventually issued and that two other permit applications were simply never processed.

However, on appeal, the Dubucs have asserted for the first time that their permit applications were

constructively denied pursuant to Mich. Comp. Law § 125.1511(1).[10]  Even if this court accepts that

---

[9]We have explained the following four policy considerations that "underl[ie] the extension of the *Williamson County* finality requirement to constitutional claims arising in land disputes:" 1) development of a full record; 2) demonstration of precisely how a regulation will be applied to a particular piece of property; 3) providing the relief the property owner seeks without judicial entanglement in constitutional disputes, so that disputes can be decided on non-constitutional grounds whenever possible; and 4) appreciating that land-use disputes are uniquely matters of local concern more aptly suited for local resolution. *Insomnia Inc.*, 278 F. App'x at 613 (quoting *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005)).  Notably, "the only type of case in which we have not imposed the finality requirement on constitutional claims arising out of land use disputes is that which presents a purported violation of procedural due process."  *Id.* at 614.

[10]This provision states:

The enforcing agency shall examine an application for a building permit.  If the application conforms to this act, the code and the requirements of other applicable laws and ordinances, the enforcing agency shall approve the application and issue a building permit to the applicant.  An application shall be granted, in whole or in part, or denied within 10 business days, except that in case of an unusually complicated building or structure, action shall be taken within 15 business days.  *Failure by an enforcing agency to grant, in whole or in part, or deny an application within these periods of time shall be deemed a denial of the application for purposes of authorizing the institution of an appeal to the appropriate board of appeals.*

this provision caused the constructive denial of the Dubucs' permit applications, that does not necessarily satisfy the finality requirement. Instead, *Grace Community Church v. Lenox Township*, demonstrates that the permit applications' denial would not be final until ruled upon by the ZBA. 544 F.3d 609, 613-18 (6th Cir. 2008). Pursuing this ability to appeal would allow the administrative record to be further developed, so that the issue might be resolved at the administrative level and the underlying retaliation claim deemed unnecessary. "'We do not want to encourage litigation that is likely to be solved by further administrative action and we do not want to put barriers to litigation in front of litigants when it is obvious the process down the administrative road would be a waste of time and money.'" *Id.* at 616-17 (quoting *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 158 (6th Cir. 1992)). In the Dubucs' case, however, it is not apparent that their issues could not be resolved with further administrative action, especially considering the Dubucs' concession that at least one of the permits was eventually issued and that communications were received in regard to

(Emphasis added.)

the other two applications.[11]  Thus, the Dubucs' permit applications have not yet reached a final

determination, and their retaliation claim is not ripe for review.

**IV.**

During the pendency of this appeal, one of the individual defendants, Michael Kruszewski,

died, prompting the defendants to file a suggestion of death with the district court on April 19, 2010.

Because Kruszewski is the only party to the defendants' retaliation claim, this court requested that

the parties submit letter briefs addressing whether that claim should be dismissed.  The defendants'

letter brief alleged that because the Dubucs failed to file a motion for substitution or any motion for

extension of time within ninety days of the service of the suggestion of death, the Dubucs' retaliation

---

[11]In regard to the status of their permit applications the Dubucs stated as follows:

Various permit applications were not processed for 3 months without any further
explanation as to why they were not processed other than Defendants-Appellees'
preference that the applications go to the township attorneys.  R. 79, Response to
Motion for Attorney Fees, Exhibit A, affidavit of Steve Preston of Preston Electric,
stating that Green Oak Township personnel informed him that they were told not to
issue permits for Plaintiffs' property.  See also *id.*, Exhibit B, affidavit wherein Mr.
Preston also states that after applying for an electrical permit in September of 2008
that he did not hear back from the township until January, 2009 (3 months later)
when he was called and told that the permit was ready.  Apparently sometime in
January 2009 the Appellees realized that their refusal to process permit applications
was in violation of due process.  Also see *id.*, Exhibit C, affidavit of David Kuehnl
(Radiant Energy), wherein he states that on January 14, 2009 he called the township
about a permit application that was filed with the Township Building Dept., three
months earlier, on October 10, 2008 and that they told him he must fill out a new
application because his original could not be found.
     There is also a third permit application that was not processed.  After three
months of not being processed, the Township sent out their first response.  It was a
letter stating that they had received the application and that it was deficient and could
not be processed.  That permit has never been issued.

claim should be dismissed pursuant to Federal Rule of Civil Procedure 25(a)(1) and Federal Rule of Appellate Procedure 43(a). However, the Dubucs claimed that they were not late in seeking substitution because the defendants failed to serve their suggestion on or indicate who was Kruszewski's representative, and because Appellate Rule 43 does not contain the same time constraints as Civil Rule 25. In the alternative, the Dubucs argued that even if they were late, they should be allowed to substitute Kruszewski's representative to the suit pursuant to Federal Rule of Civil Procedure 6(b) and because their failure to timely seek substitution constitutes excusable neglect. The Dubucs then filed a motion for substitution with this court on November 29, 2010, seeking to substitute Denise Kruszewski for defendant Michael Kruszewski.

Because we hold that the Dubucs' retaliation claim is not ripe for review, the Dubucs' motion for substitution filed with this court on November 29, 2010 is moot.[12]

**V.**

For these reasons, we AFFIRM the district court's grant of summary judgment on the Dubucs' procedural due process and retaliation claims.

---

[12]In addition, because the district court was correct in granting summary judgment for the defendants on the Dubucs' procedural due process and retaliation claims, we need not address the individual defendants' argument that they are entitled to qualified immunity.