NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0451n.06

Case No. 22-5310

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Nov 08, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BRIAN E. JOHNSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| MIKE DOBBINS, et al., | ) | TENNESSEE |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | OPINION |

Before: SILER, NALBANDIAN, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Concerned about the safety and security risks posed by an inmate's wrist brace, Williamson County jail officials housed the inmate in a single-man cell. After his release, the inmate sued several officers and administrators for violating his rights under the Constitution and the Americans with Disabilities Act by separating him from the general prison population due to his medical status. Before bringing his grievances to federal court, however, the inmate failed to avail himself of the grievance process available at the prison. For that and other reasons, we affirm the district court's grant of summary judgment to defendants.

**I.**

Brian Johnson was imprisoned at the Williamson County (Tennessee) jail for drug-related offenses. He arrived at the jail wearing a wrist brace, which he asked to not be removed. After examining Johnson, jail officials deemed the brace to pose safety and security risks. So, to allow

Johnson to retain the brace, the officials classified him as a medical separation inmate. This meant Johnson would be kept in a single-man cell up to twenty-three hours per day.

The jail affords its inmates the right to appeal housing classifications through an internal grievance process. And Johnson, it seems, was no stranger to airing complaints while at the jail. Over the course of his imprisonment, he filed requests asking prison officials to take a range of actions, even those as miniscule as bringing back Takis Chips to the commissary. Yet Johnson never filed a grievance challenging his medical separation status. The closest he came to doing so was through a series of conversations with a prison nurse. At one point, Johnson inquired about being moved into the general population, only to later withdraw that request.

Johnson was released after more than 17 months in jail, the bulk of which was spent in medical separation. Upon his release, he sued various jail officers and administrators, raising seven different claims for relief. Primarily, Johnson alleged that prison officials violated the Eighth and Fourteenth Amendments, the ADA, and state law by subjecting him to extended solitary confinement. The district court granted summary judgment against Johnson. This appeal followed.

## II.

Widely litigated in the district court, Johnson's case is narrower on appeal. He has abandoned a host of claims and issues pursued below. *See Bard v. Brown County*, 970 F.3d 738, 750–51 (6th Cir. 2020). Johnson leaves us just two claims to resolve: whether defendants (1) denied him notice and an opportunity to be heard on changing his medical separation status in violation of his Fourteenth Amendment procedural due process rights; and (2) failed to provide him with a reasonable accommodation as to his disability in violation of the ADA. He identifies four defendants he believes are culpable for the asserted wrongs—two supervisors and two officers

that worked at the jail during Johnson's confinement. We review the district court's summary judgment award de novo, viewing the facts and all reasonable inferences in Johnson's favor. *Groening v. Glen Lake Cmty. Schs.*, 884 F.3d 626, 630 (6th Cir. 2018). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**A.**

Begin with Johnson's procedural due process claim. Among the points of contention between the parties are the timeliness of Johnson's claim and whether liability can extend to the supervisor defendants. But as the case can be resolved on other grounds, we leave those issues aside.

To overcome summary judgment for his procedural due process claim, Johnson needed to present evidence raising a genuine dispute of material fact as to whether a violation occurred. Articulated in the context of Johnson's legal theory, he was required to show that (1) the state interfered with his protected liberty interest; and (2) the procedures afforded him were constitutionally insufficient. *Bethel v. Jenkins*, 988 F.3d 931, 942 (6th Cir. 2021). Beginning with the liberty interest at stake, Johnson's lane is narrow. The lone relevant interest that the Supreme Court has recognized in this setting is to not be subjected to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). And viewing that right in the circumstance of a decision to segregate an inmate from the general population, prison officials need only provide an "informal" process: an "inmate must merely receive some notice" of the prison's decision and an "opportunity to present his views" on the matter to the relevant prison official. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated on other grounds by Sandin*, 515 U.S. at 483–84; *see also Wilkinson v. Austin*, 545 U.S. 209, 229

(2005) (recognizing *Hewitt*'s continued relevance to the question of what process is due to a prisoner).

Johnson is unable to navigate these narrow legal channels. Assuming for argument's sake that his placement on medical separation imposed an atypical and significant hardship, Johnson was afforded adequate process to challenge any liberty deprivation. He undisputedly received "some notice" of his housing classification when he was made aware at booking of his placement on medical separation status. *See Hewitt*, 459 U.S. at 476. He likewise had the "opportunity to present his views" to challenge his medical separation status through the grievance process: no one can claim that Johnson was unfamiliar with that process, having successfully raised other issues of concern to his jailers. *Id.* Yet Johnson chose not to formally challenge his housing assignment, and indeed recanted any interest in being moved to the general population. With Johnson having "not avail[ed himself]" of the opportunity to be heard on his claim, no due process violation occurred. *Dubuc v. Township of Green Oak*, 406 F. App'x 983, 989 (6th Cir. 2011) (citing *Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004)).

Johnson responds by emphasizing that prison officials "refused to provide" him with a "periodic review" of his housing classification, notwithstanding County policy to the contrary. But we fail to see how supposed nonadherence to an internal jail policy has any significance with respect to a procedural due process claim. *See Graham v. Chicowski*, No. 18-2049, 2019 WL 4381841, at *5 (6th Cir. May 3, 2019) (holding that the "failure to follow . . . applicable state-law procedures" concerning administrative segregation is not actionable under § 1983) (citing *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989)). All procedural due process entitled Johnson to was notice of and an opportunity to be heard concerning a prison segregation order. *See Hewitt*, 459 U.S. at 476. We are unaware of any authority that places an

affirmative, due-process-based obligation on prison officials to proactively review a prisoner's housing classification. *See Trozzi v. Lake County*, 29 F.4th 745, 751–52 (6th Cir. 2022) (addressing the narrow circumstances in which the Constitution imposes affirmative duties upon prison officials).

**B.**

Johnson's remaining claim arises under Title II of the ADA. He invokes the ADA's requirement that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. We recognize two types of claims under Title II: intentional discrimination and reasonable accommodation claims. *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004). Johnson pursues the latter. The jail, he says, was required to accommodate his wrist injury by placing him in the general population.

Reasonable accommodation claims find their genesis in a federal regulation requiring public entities to "make reasonable modifications in policies, practices, or procedures when [such] modifications are necessary to avoid discrimination on the basis of disability." *See Madej v. Maiden*, 951 F.3d 364, 372 (6th Cir. 2020) (quoting 28 C.F.R. § 35.130(b)(7)(i)). Reading that regulation alongside case law borrowed from our interpretation of Title III, it becomes evident that a public entity is "not liable for failing to make reasonable accommodation if the plaintiff did not request accommodation or otherwise alert the covered entity to the need for accommodation." *Marble v. Tennessee*, 767 F. App'x 647, 652 (6th Cir. 2019) (citing *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046–47 (6th Cir. 1998)); *see also Peroli v. Huber*, No. 21-3202, 2021 WL 5411215, at *11 (6th Cir. Nov. 19, 2021); *Qiu v. Univ. of Cincinnati*, 803 F. App'x 831, 837

(6th Cir. 2020); *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 461 (6th Cir. 1997) (en banc) (recognizing that only an accommodation that "had been brought to the attention" of a public entity is "available" as the basis for a reasonable accommodation claim under Title II).

Here, the record is bereft of any evidence that Johnson alerted the jail to the need for accommodation to avoid disability discrimination, let alone made a specific request that he be placed in the general prison population. At one point, in fact, he told a jail nurse that he was not interested in moving into the general population. All things considered, Johnson failed to satisfy his "initial burden" of showing that the jail was on notice as to his need for specific accommodations. *See Marble*, 767 F. App'x at 652.

Johnson resists this conclusion on a few fronts. He first contends that Title II did not require him to request an accommodation. True, as Johnson notes, we have recognized that Title II, in addition to prohibiting intentional discrimination, also imposes "affirmative obligations on public entities." *See Ability Ctr. of Greater Toledo*, 385 F.3d at 910. Public entities, for example, must make "reasonable modifications" to "policies, practices, or procedures" to avoid disability discrimination. *See* 28 C.F.R. § 35.130(b)(7)(i). But that obligation arises only where the entity is aware of the needed accommodation. Public officials, after all, are not "clairvoyan[t]," nor does Title II expect as much. *Windham v. Harris County*, 875 F.3d 229, 236–37 (5th Cir. 2017) (citations omitted). A public entity's responsibility to reasonably accommodate a disability, in other words, requires both an awareness of a plaintiff's specific needs as well as the plaintiff requesting a corresponding accommodation in "direct and specific" terms. *Id.*

Even if so, says Johnson, he maintains that he requested an accommodation by "verbally campaign[ing] to be released from solitary confinement." Save for Johnson's unadorned statements that he "campaigned" for release from medical separation status, however, his evidence

is lacking. He does not explain when the campaign occurred, what it entailed, or to whom it was directed, benchmarks he must satisfy to avoid summary judgment. *See Napier v. Laurel County*, 636 F.3d 218, 225 (6th Cir. 2011). Nor, for that matter, has Johnson asserted that the "purpose" of his request was to "accommodate" a disability, another aspect of his "initial burden" to assert a reasonable accommodation claim. *See Marble*, 767 F. App'x at 652 (citing *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004)).

Next, Johnson faults defendants for failing to provide an individualized review of his confinement conditions in violation of 28 C.F.R. § 35.139(b). At the outset, we note that it is not entirely clear whether Johnson can rely on Title II's private cause of action to enforce this regulation. *See Ability Ctr. of Greater Toledo*, 385 F.3d at 907–08, 914 (recognizing a cause of action to enforce an ADA regulation only to the extent that it "effectuates" Title II's prohibition on intentional disability discrimination or reasonable accommodations requirement). And even if he can, jail officials did not violate the implementing regulation. After Johnson alerted the jail of his interest in continuing to wear his wrist brace, jail officials assessed his needs and allowed him to wear the brace while imprisoned. Any further individualized "modification[]" of the terms of Johnson's confinement, *see* 28 C.F.R. § 35.139(b), would have required him to alert the jail as to the need for such a modification, *see Marble*, 767 F. App'x at 651 (observing that an "individualized inquiry" is required "in response to a request for accommodation"). Yet Johnson failed to do so.

As a final salvo, Johnson turns to another ADA implementing regulation, 28 C.F.R. § 35.107(a). That regulation requires certain public entities to designate an employee to "coordinate its efforts to comply with and carry out" Title II's implementing regulations. *Id.* Here, too, we will assume that the ADA provides a cause of action to pursue a violation of this regulation.

*But see Ability Ctr. of Greater Toledo*, 385 F.3d at 914 (recognizing that implementing regulations that create obligations "not necessarily required by" the statute are "not enforceable under Title II's private cause of action"). In district court Johnson faulted the jail for not employing a trained ADA coordinator. But any purported training obligation is beyond 28 C.F.R. § 35.107(a)'s text. *See* 28 C.F.R. § 35.107(a) ("A public entity that employs 50 or more persons shall designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under this part . . . ."). Today, Johnson moves away from the training aspect of his argument and instead maintains, more broadly, that the jail failed to designate anyone as an ADA coordinator. But as the jail presented evidence to the contrary—facts with which Johnson has created no genuine dispute—his ADA claim (like his constitutional claim) lacks merit.

*   *   *   *   *

We affirm the judgment of the district court.